## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARK JAY ALLEN,                                    )
                                                   )
            Plaintiff,                             )
                                                   )
vs.                                                )          CIVIL NO. 03-441-MJR
                                                   )
JOHN ASHCROFT, KATHLEEN HAWK  )
SAWYER, T.J. BONDURANT, GEORGE  )
L. DORSETT, H. MARSHALL JARRETT,  )
HARRELL  WATTS,  JOHN  FORD,  )
MIRIAM  F.  MIQUELON,  JAMES  )
CUTCHIN,  MICHAEL  CARR,  G.L.  )
HERSHBERGER, E.A. STEPP, RUSSELL  )
RAU,  KEVIN  MURPHY,  DONALD  )
HUDSON,  DAVID  SHOFF,  SHELBY  )
MONTGOMERY,  RICK  ELLIS,  PETE  )
BLUDWORTH,  CRAIG  SWARTZ,  D.  )
LOCKRIDGE,  JESSE  MASH,  S.  )
HUGHES,  LARRY  JACOBS,  D.  )
GONZOLAS,  MR.  JANNINGS,  )
MICHAEL  AHRENS,  RICHARD  )
URBANIK, TERRY BAKKE,  A. LI, D.J.  )
KRIST, LT. KRIST, OFFICER PERRY,  )
OFFICER  PRICE,  OFFICER  BILLY,  )
UNITED  STATES  OF  AMERICA,  )
FEDERAL  BUREAU  OF  PRISONS, W.  )
BROWN, OFFICER BURGES, OFFICER  )
HACKLEMAN, ONE UNKNOWN U.S.P.  )
MARION OFFICER, TWO UNKNOWN  )
BUREAU  OF  PRISONS  EXECUTIVES,  )
TWO UNKNOWN DEPT. OF JUSTICE  )
EXECUTIVES  and  ONE  UNKNOWN  )
U.S.P. MARION EMPLOYEE,                     )
                                                   )
            Defendants.                            )

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff, currently an inmate in the United States Penitentiary in Florence, Colorado, brings

this action for alleged violations of his constitutional rights by persons acting under the color of

federal  authority.   The  actual  amended  complaint  (Doc.  19)  is  quite  brief,  as  it  contains  no

allegations against any Defendant.  However, Plaintiff has attached to the amended complaint a 56-page memorandum of law which he incorporates by reference into the amended complaint.  This memorandum does not set forth separate claims; rather, it presents a rough chronology of events beginning in January 2002.  Interspersed within the factual allegations are numerous statutory and case citations, which only serve to complicate this lengthy brief.[1]  However, the primary theme of this action is Plaintiff's belief that all defendants have conspired to cause him physical harm due his cooperation, or lack there of, with a federal investigation and prosecution of other inmates at Marion.  For his pain and suffering, he seeks an aggregate of $9,750,000 in damages.

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(f) and 10(b), the Court finds it appropriate to break the claims in Plaintiff's *pro se* amended complaint and other pleadings into numbered counts, as shown below.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.

> **COUNT 1:**   Against Defendants Ahrens, Billy, Bludworth, Carr, Cutchin, Ellis, Ford, Gonzolas, Hackleman, Hershberger, Hudson, Hughes, Jacobs, D.J. Krist, Lt. Krist, Lockridge, Mash, Montgomery, Murphy, Perry, Price, Rau, Shoff, Stepp, Swartz, Urbanik, and two Unknown Defendants for a conspiracy to cause him physical harm in retaliation for withdrawing his testimony against other inmates (¶¶ 1-15, 18-25, 27-28, 31-34, 35-37, 39-40, 42).

> **COUNT 2:**   Against Defendant Brown for excessive force and procedural due process violations (¶ 17).

> **COUNT 3:**   Against Defendants Burges, Hudson, Jannings, Krist, Perry, Rau and Stepp for subjecting him to substandard conditions of confinement, in violation of his rights under the Eighth Amendment (¶ 26).

---

[1] This brief is supplemented with more than 100 exhibits, each of which has been carefully reviewed by the Court; these exhibits are cataloged in Exhibit A to this order.

**COUNT 4:**    Against Defendants Bakke, Gonzolas, Hershberger, Li, Rau, Shoff, Stepp and Urbanik for deliberate indifference to his serious medical needs, in violation of his rights under the Eighth Amendment (¶¶ 16, 29-30, 35, 38).

**COUNT 5:**    Against Defendants Ashcroft, Bondurant, Cutchin, Dorsett, Hershberger, Jarrett, Miquelon, Sawyer, Stepp, Watts and Unknown Department of Justice Executives for failing to investigate Plaintiff's reports of constitutional violations at Marion (¶ 43).

**COUNT 6:**    Against Defendant United States and Federal Bureau of Prisons for negligence, under the Federal Tort Claims Act (¶ 44).

**COUNT 7:**    Against Defendants Ellis, Hudson, Jacobs, Montgomery, Rau, Shoff, Stepp and an Unknown Marion Employee for opening his legal mail and interfering with his access to the courts (¶ 45).

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.  An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are legally frivolous and thus subject to summary dismissal.

## JURISDICTIONAL MATTERS

Plaintiff invokes jurisdiction under several statutes.  In the civil arena, he cites to 28 U.S.C. §§ 1331, 2671 *et seq.*, the Federal Tort Claims Act ("FTCA"); 28 U.S.C. § 509, 1343 and 1361; 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1987 and 1997(d); and 28 U.S.C. § 1332.

28 U.S.C. § 509 simply defines the functions of the Attorney General.  Similarly, 42 U.S.C. § 1997 only defines terms.  Neither statute provides for any cause of action.

28 U.S.C. § 1332 requires diversity of citizenship between Plaintiff and *all* Defendants.  Because the vast majority of Defendants are located in Illinois, as is Plaintiff, *complete* diversity does not exist, and Section 1332 cannot provide a basis for jurisdiction over this action.  *See Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 388 (1998).

42 U.S.C. § 1981 provides for equal rights under the law "as is enjoyed by white citizens."  Section 1981 was "meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race."  *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295-296 (1976).  *See also Gratz v. Bollinger*, 539 U.S. 244 (2003).  Nowhere in the complaint does Plaintiff suggest that Defendants' actions were motivated by racial animus; therefore, he has no claim under Section 1981.

42 U.S.C. § 1987 merely grants power to "[t]he United States attorneys, marshals, and deputy marshals, the United States magistrate judges... to institute prosecutions" against those who violate certain statutory provisions as outlined in Section 1987; it does not provide for a private right of action against one of these office-holders.  Therefore, Plaintiff has no claim under Section 1987.

In the criminal arena, Plaintiff cites to 18 U.S.C. § 1505, obstruction of proceedings; 18 U.S.C. § 201(b)(3), (c)(i), (b)(2), bribery of witness; 18 U.S.C. § 241, conspiracy against rights; 18 U.S.C. § 286, conspiracy to defraud the government; 18 U.S.C. § 1510(a), obstruction of criminal investigation; 18 U.S.C. § 1512(b)(3), tampering with witness, victim or informant; 18 U.S.C. § 1513(b), retaliation against witness; and 18 U.S.C. § 1964, RICO.

Criminal statutes do not provide for private civil causes of action.  *See generally Diamond v. Charles*, 476 U.S. 54, 64-65 (1986) (holding that private citizens cannot compel enforcement of

- 4 -

criminal law).  *See also Pawelek v. Paramount Studios Corp.*, 571 F.Supp. 1082, 1083 (N.D.Ill. 1983) (no private right of action under 18 U.S.C. § 1505); *Dugar v. Coughlin*, 613 F.Supp. 849 (C.D.N.Y. 1985) (no private right of action under 18 U.S.C. § 286).  Therefore, Plaintiff has no claim under 18 U.S.C. §§ 1505,  201(b)(3), (c)(i), (b)(2), 241, 286, 1510(a), 1512(b)(3), or 1513(b).

As for 18 U.S.C. § 1964, that statute provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit...." 18 U.S.C. § 1964(c).  "[B]usiness or property" are, of course, words of limitation which preclude recovery for personal injuries and the pecuniary losses incurred therefrom, and "a civil RICO action cannot be premised solely upon personal or emotional injuries."  *Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992).  *See also Evans v. City of Chicago*, 434 F.3d 916, 925-26 (7th Cir. 2006). Accordingly, Plaintiff has no civil claim under RICO.

In sum, all claims discussed below will only be considered under 28 U.S.C. § 1331, 1343 and 1361; 42 U.S.C. §§ 1983, 1985 and 1986; and, in the case of Count 7, the FTCA.  In responding to those claims that survive this review pursuant to 28 U.S.C. § 1915A, Defendants need only consider these statutes in preparing their responses.

## COUNT 1

In 2002, Plaintiff alleges that he entered into an agreement with Defendants to testify, falsely, for the government in relation to a criminal investigation of certain events that occurred at the United States Penitentiary in Marion, Illinois.[2]  Plaintiff states that in exchange for his testimony before the grand jury, he was to be transferred out of U.S.P. Marion and placed into the federal witness security program to protect him from retribution by members of the Aryan Brotherhood; he

---

[2]  *See United States v. Sahakian*, Case No. 99-cr-40044 (S.D. Ill., filed July 6, 1999).

would also be granted a significant reduction in his prison sentence.  In March of 2002 Plaintiff states that he did, in fact, provide false testimony before the grand jury as requested, but he claims that Defendants reneged on their part of the agreement.

When he was not transferred out of Marion, Plaintiff filed a grievance indicating his reluctance to continue his cooperation with the government.  Plaintiff claims that Defendants provided monetary incentives to ensure his continued cooperation.  Plaintiff further alleges that in retaliation for his complaints regarding the government's breach of their agreement with him, Defendants deliberately endangered his safety by housing him with a violent inmate who assaulted him on September 29, 2002.[3]

After the September 29 assault, Plaintiff alleges that Defendants conspired to assign him to housing unit occupied by several members of the Aryan Brotherhood, and they also advised several of those gang members that Plaintiff was testifying against the Brotherhood.  Plaintiff states that while he was on that range, gang members constantly made verbal threats against him from their cells, causing him to fear for his life.  He also alleges that various members of the Brotherhood attempted to bribe an inmate orderly to throw hot water or feces at Plaintiff in his cell.  On October 3, 2002, the individuals against whom Plaintiff had testified were moved into the same housing unit where Plaintiff was confined.

From October 2002, Plaintiff spoke with numerous individuals at different times about the situation.  Each told Plaintiff that he was aware of the situation, yet none of them took action to move Plaintiff to another housing unit.  Plaintiff was occasionally placed in close proximity to gang members or their associates, despite his complaints and objections.  Over time, Plaintiff became

---

[3] Apparently Plaintiff was body-slammed by inmate Rollins, resulting in minor abrasions and bruising.  *See* Exhs. 16-17.

more and more fearful for his safety.  He claims that other inmates on the range were persistently harassing and threatening him.  He complained vocally and in writing on numerous occasions, but no action was taken to move him to a more secure location.  As a result of his constant fear, he was unable to sleep, and his mental state deteriorated.  He also claims he was arbitrarily placed in punitive segregation for seven months due to his complaints over his mistreatment at Marion.  He believes that all of these events occurred as part of a large conspiracy of retaliation against him for his refusal to continue providing false testimony in the *Sahakian* case.  As detailed in the amended complaint, Plaintiff claims that the following individuals were part of this conspiracy: Ahrens, Billy, Bludworth, Carr, Cutchin, Ellis, Ford, Gonzolas, Hackleman, Hershberger, Hudson, Hughes, Jacobs, D.J. Krist, Lt. Krist, Lockridge, Mash, Montgomery, Murphy, Perry, Price, Rau, Shoff, Stepp, Swartz, Urbanik and Unknown Defendants (*see* ¶¶ 1-15, 18-25, 27-28, 31-34, 36-37, 39-40, 42).

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Luttrell v. Nickel,* 129 F.3d 933, 935 (7th Cir. 1997).  However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety.  *Farmer,* 511 U.S. at 834.  In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger.  *Id.; Reed v. McBride,* 178 F.3d 849, 852 (7th Cir. 1999).  A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety.  *Pope v. Shafer,* 86 F.3d 90, 92 (7th Cir. 1996).  In other words, Defendants had to know that there was a substantial risk that those who attacked Plaintiff would do so, yet failed to take any action.  *Sanville v.*

*McCaughtry,* 266 F.3d 724, 733-34 (7ᵗʰ Cir. 2001).  Further, "it is enough in pleading a conspiracy

to indicate the parties, general purpose, and approximate date."  *Walker v. Thompson*, 288 F.3d

1005, 1007-08 (7ᵗʰ Cir. 2002).  *See also Hoskins v. Poelstra*, 320 F.3d 761, 764 (7ᵗʰ Cir. 2003);

*Tierney v. Vahle*, 304 F.3d 734, 740 (7ᵗʰ Cir. 2002).

Applying these standards to the allegations in the amended complaint, the Court is unable

to dismiss this claim against any Defendant at this point in the litigation.  *See* 28 U.S.C. § 1915A.

## COUNT 2

On October 4, while Plaintiff was attempting to make a phone call, Defendant Brown yanked

the phone away from him, causing injury to Plaintiff's left hand, forearm and elbow.  After Plaintiff

reported Brown's conduct to his supervisor and explained the cause of his injuries to the nurse,

Brown wrote a disciplinary report against him for attempted destruction of the phone.  He also

alleges that Brown told the nurse to document the cause of injury as being Brown's attempt to

prevent Plaintiff from destroying the phone.

The intentional use of excessive force by prison guards against an inmate without

penological justification constitutes cruel and unusual punishment in violation of the Eighth

Amendment and is actionable under Section 1983.  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992);

*DeWalt v. Carter*, 224 F.3d 607, 619 (7ᵗʰ Cir. 2000).  "[W]henever prison officials stand accused of

using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core

judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore

discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6-7.  An inmate

seeking damages for the use of excessive force need not establish serious bodily injury to make a

claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action. . . .

[the] prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional

recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10; *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

The medical report related to this incident (Exhibit 18) states that Plaintiff had pulled the phone through the bars, and he hit his left hand when Brown pulled on the phone to retrieve it; he suffered a scrape on his finger and a bruised, scraped elbow as a result. Such minor injuries stemming from an officer's attempt to retrieve a telephone do not give rise to an Eighth Amendment claim. Accordingly, Plaintiff's excessive force claim against Brown is dismissed with prejudice.

As for the disciplinary ticket, Plaintiff claims that Brown wrote a disciplinary report against him, falsely charging him with attempted destruction of the phone. Plaintiff makes no allegations regarding the outcome of this charge, and nowhere in the exhibits can the Court find any reference to this disciplinary ticket. Therefore, Plaintiff has failed to allege that he was deprived of any protected liberty interest as the result of this disciplinary incident.

In sum, Count 2 is dismissed with prejudice in its entirety.

## COUNT 3

Plaintiff states that when he was moved to the SCU on September 29, 2002, all of his winter clothing was confiscated. On October 11, 2002, he complained to Stepp, Hudson and Krist about needing his winter clothing; he alleges that "outside temperatures were constantly in the 20's and lower 30's, and the heating system ha not been turned on." (¶ 26) He further claims that Rau, Perry, Burges and Jannings were either aware of or responsible for the climate control within that particular housing unit.

Prisoners have an Eighth Amendment right to adequate shelter, including a right to protection from cold. *See Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). However, though

the Court is required to accept Plaintiff's allegations as true, the Court also has

> the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. . .

*Neitzke v. Williams,* 490 U.S. 319, 327-28 (1989).

Pursuant to Rule 201 of the Federal Rules of Evidence, the Court takes judicial notice of the historical weather records for Marion, Illinois, for the period of September 29 through October 11 of 2002, and the Court finds that Plaintiff's allegation regarding the low temperatures is completely baseless.  As shown in Exhibit B to this order, the lowest recorded outside temperature during that period was on October 8, 2001, when the temperature fell to 41° F.  In fact, reviewing the records through the end of November 2002, the Court notes that the temperature fell into the 20's only five times, the first occasion being November 2 (28° F), and the remaining four falling in the latter half of November.  Even temperatures in the "low 30's" did not consistently occur until the latter half of November.

Because Plaintiff's allegation about the outside temperatures is blatantly false, this claim is dismissed with prejudice.

### COUNT 4

***Suicide Attempt***

Due to sleep deprivation, panic and other psychological problems, Plaintiff spoke with Defendant Urbanik on October 4.  He alleges that Urbanik would not call him out of his cell to the medical unit; rather, Urbanik spoke with him only briefly on the range and then walked away (¶ 16).

In late October 2002, Plaintiff alleges that he was so "overwhelmed with grief, despair, hopelessness" that he was "contemplating suicide" (¶ 29).  On October 25 he advised Castillo of his mental state, complaining that Urbanik had ignored his recent requests for a consultation; Castillo

(not named as a defendant in this action) promised to convey the information to Urbanik and Li.  In the early hours of October 28, Plaintiff was found unconscious in his cell with a broken cord around his neck; he had attempted suicide by hanging himself from the light fixture.  Plaintiff alleges that after this incident, Urbanik falsified entries indicating that he had, in fact, spoken with Plaintiff and discerned no suicidal tendencies.  Plaintiff also alleges that Urbanik frequently had a "strong alcohol" odor on his breath (¶ 30).  He thus argues that Urbanik and Li were deliberately indifferent to his medical needs by failing to respond to his requests for mental health treatment.

> Prison officials have a duty, in light of the Eighth Amendment's prohibition against cruel and unusual punishment, to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  To determine whether an inmate's Eighth Amendment rights were violated by a deprivation, we examine the alleged violation both objectively and subjectively.  *See id.* at 834, 114 S.Ct. 1970.  "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* (quotation omitted).  Second, the mental state of the prison official must have been "one of deliberate indifference to inmate health or safety." *Id.* (quotation omitted).

*Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001).  The Seventh Circuit has found that "the need for a mental illness to be treated could certainly be considered a serious medical need."  *Id.* at 734; *Wellman v. Faulkner*, 715 F.2d 269 (7th Cir. 1983).  *See also Gibson v. County of Washoe, Nev.*, 290 F.3d 1175 (9th Cir. 2002); *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) (a doctor's decisions to remove patient from medication and to restore the medication without Lithium constitutes deliberate indifference to patient's psychiatric condition).

Based on the allegations in the amended complaint, the Court cannot dismiss this claim against Urbanik at this point in the litigation.  However, other than Castillo's statement that he would inform Li, there are no allegations to suggest that Li was ever aware of Plaintiff's need for mental health treatment; therefore, the claim against Li is dismissed with prejudice.

- 11 -

Plaintiff next claims that after he was taken to the medical unit on October 28, approximately one hour elapsed until Welch (the on-call physician who is not a defendant) arrived at Marion. Plaintiff alleges that Defendant Gonzolas, the evening supervisor, was deliberately indifferent to his health due to Gonzolas's failure to make a 9-1-1 call for emergency assistance.  Exhibits indicate that Plaintiff was in the medical unit at Marion receiving treatment within half an hour of his being found unconscious; common sense and experience dictate that it could easily have taken just as long, if not longer, for an emergency team to arrive and be cleared through security at the prison.  After that, it would be mere speculation to guess how long it would have taken before Plaintiff was transported to an outside hospital to be treated by a physician in the emergency room.  Therefore, choosing to call Welch rather than 9-1-1 was hardly deliberate indifference; this claim against Gonzolas is dismissed with prejudice.

Finally, Plaintiff alleges that Defendants Bakke, Li, Stepp and Hershberger authorized a policy of allowing medical personnel to leave the prison grounds between 10 PM and 5 AM each day; they also failed to properly train and supervise staff.  Plaintiff argues that these actions constitute "deliberate indifference to life, health and safety of prisoners in their charge" (¶ 29). Despite his use of the term "deliberate indifference," these allegations constitute, at best, claims of negligence.  The Seventh Circuit has frequently noted that negligence is not actionable under civil rights law.  *See Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997);  *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996); *Sellers v. Henman*, 41 F.3d 1100, 1103 (7th Cir. 1994).  Further, Plaintiff does not allege that there were ***no*** medical personnel on staff that evening, and the exhibits clearly refute any such claim.  Accordingly, this claim against Bakke, Li, Stepp and Hershberger is dismissed with prejudice.

*Medication*

On November 9, 2002, Defendants Shoff, Rau, Urbanik and Bakke allegedly discontinued three prescription medications that Plaintiff had been taking.  Plaintiff states that such a sudden interruption in these unidentified medications could cause serious psychological harm, and that such harm occurred when he engaged in self-mutilation the next day (¶ 35).  In December 2002, Plaintiff and Urbanik participated in a teleconference consultation with a physician in the medical center in Springfield.  That doctor immediately prescribed medication; Plaintiff alleges that Urbanik failed and refused to provide him with that medication (¶ 38).

As stated above, "the need for a mental illness to be treated could certainly be considered a serious medical need."  *Sanville*, 266 F.3d at 734.  *See also Wellman*, 715 F.2d 269; *Gibson*, 290 F.3d 1175; *Waldrop*, 871 F.2d at 1035.  Therefore, the Court is unable to dismiss this claim against Shoff, Rau, Urbanik and Bakke at this point in the litigation.

## COUNT 5

Plaintiff claims that he and his family, along with Senators Durbin and Graham, notified Defendants Bondurant, Dorsett, Jarrett, Miquelon, Ashcroft, Watts, Sawyer and Unknown Administrators about the above-mentioned incidents, yet Defendants failed to investigate these charges as required by the Citizens Protection Act of 1998, which Plaintiff cites as 105th Congress, H.R. 4276 § 821(a) and § 822(a).  The Court has searched diligently for this Act, and nowhere can the Court find where this Act is codified, although the Court was able to find the relevant text in the Congressional Record.  It appears, therefore, that this portion of the bill may have perished during hearings in Congress.  However, even if this Act does exist, it was designed to establish certain ethical standards for government attorneys, and particularly for those employed within the Department of Justice.  It does not provide for a private right of action, and any claim Plaintiff may

be asserting under this Act is dismissed with prejudice.

Plaintiff also alleges that, by their collective failure to take action to prevent these events from occurring or to discipline those responsible for these events, these Defendants actively entered into this vast conspiracy to deprive him of his constitutional rights.  However, Plaintiff fails to allege that most of these Defendants had actual knowledge of these events.  The fact that he and his family sent them correspondence does not mean that each of these individuals ever received and read that correspondence, thus giving them personal knowledge of these events.  Plaintiff's exhibits indicate that, in the case of Sawyer, the letter sent to her from attorney Goldberg was forwarded to Stepp, and Stepp responded in kind.  The same can be said for the communications sent to Jarrett.  Such responses are certainly appropriate, even though Plaintiff believes that they immediately should have personally ordered his immediate transfer to another location.

As for any theory of supervisor liability, "[t]he doctrine of respondeat superior does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.' "  *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001), *quoting  Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001).  *See also Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987);  *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981).

In sum, Count 7 is dismissed with prejudice in its entirety.

## COUNT 6

Plaintiff's next claim is a claim negligence against the United States and the Federal Bureau of Prisons, brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq*.

> The FTCA permits an individual to bring suit in federal court against
> the United States for injury or loss of property, or personal injury or

- 14 -

> death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  28 U.S.C. § 1346(b)(1).  Pursuant to this provision, federal inmates may bring suit for injuries they sustain while incarcerated as a consequence of the negligence of prison officials.  *United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963).  However, the plaintiff may not bring such a suit unless he has first presented his claim to the appropriate federal agency and that agency has denied the claim.  28 U.S.C. § 2675(a).

*Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003).

Plaintiff alleges that he has fully exhausted his administrative remedies as required by the FTCA, and the Court is therefore unable to dismiss his claim against the United States at this point in the litigation.  However, in an action under the FTCA, the United States of America is the only proper defendant.  *See* 28 U.S.C. § 2679(b).  Accordingly, the Federal Bureau of Prisons is dismissed from this claim.

## COUNT 7

### *Legal Mail*

Plaintiff alleged that Defendants Stepp, Rau, Hudson, Montgomery, Shoff, Ellis, Jacobs and an unknown Marion employee have periodically opened his incoming correspondence from his attorneys, even though that mail was clearly marked as legal mail.  As support for this claim, he refers to numerous exhibits – some of these are envelopes addressed to Plaintiff from attorneys, others are letters he has written to Defendants complaining about their treatment of his mail.

> Inmates have a First Amendment right both to send and receive mail, *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999), but that right does not preclude prison officials from examining mail to ensure that it does not contain contraband, *Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Rowe*, 196 F.3d at 782.  An inmate's legal mail, however, is entitled to greater protections because of the potential for interference with his right of access to the

- 15 -

> courts. *Rowe*, 196 F.3d at 782.  Thus, when a prison receives a letter
> for an inmate that is marked with an attorney's name and a warning
> that the letter is legal mail, officials potentially violate the inmate's
> rights if they open the letter outside of the inmate's presence.  *See
> Wolff*, 418 U.S. at 577, 94 S.Ct. 2963; *Castillo v. Cook County Mail
> Room Dep't*, 990 F.2d 304, 305-06 (7th Cir. 1993).

*Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005).

Although "isolated incidents of interference with legal mail" may not state a constitutional violation, but here Plaintiff alleges "a systematic pattern or practice of interference."  *See Bruscino v. Carlson*, 654 F.Supp. 609, 618 (S.D. Ill. 1987).  Accordingly, this claim regarding interference with his legal mail cannot be dismissed at this point in the litigation.

### Access to Courts

Plaintiff alleges that Defendants knowingly "trashed" several complaints and tort claim actions that he attempted to mail to various government agencies, attorneys and legal clinics.  He further alleges that these actions were taken to thwart his efforts to exhaust his administrative remedies, such as would interfere with potential lawsuits.  He also alleges that Defendants prevented him from complying with a court order in this action regarding submission of his trust fund account statement.  This last allegation in completely baseless, as that document was filed with his *in forma pauperis* motion (Doc. 2) on July 7, 2003.

> Prison officials have an affirmative duty to provide inmates with
> reasonable access to courts, which includes providing access to
> adequate libraries (or counsel). *DeMallory v. Cullen*, 855 F.2d 442,
> 446 (7th Cir. 1988).  The right of access "requires prison authorities
> to assist inmates in the preparation and filing of meaningful legal
> papers by providing prisoners with adequate law libraries or adequate
> assistance from persons trained in the law." *Bounds v. Smith*, 430
> U.S. 817, 828 (1977).  Nonetheless, reasonable access does not mean
> unlimited access. *Hossman v. Sprandlin*, 812 F.2d 1019, 1021 (7th
> Cir. 1987).

*Martin v. Davies*, 917 F.2d 336, 338 (7th Cir. 1990).  Violations of the right of access to the courts

may be vindicated in federal court in a civil rights action pursuant to 42 U.S.C. § 1983.  An allegation of actual or threatened detriment is an essential element of a § 1983 action for denial of access to the courts, *Martin v. Davies,* 917 F.2d at 340; *Howland v. Kilquist,* 833 F.2d 639, 642-43 (7th Cir. 1987); *Hossman,* 812 F.2d at 1021-22.  Such an allegation must be more than merely conclusory, and a complaint is inadequate if it

> offers no specific facts to support these allegations – no court dates missed; no inability to make timely filings; no denial of legal assistance to which he was entitled; and no loss of a case which could have been won.

*Martin,* 917 F.2d at 340.  In the instant case, Plaintiff does not make a single allegation which would describe an actual or potential limitation on his access to the courts.  Even if his allegations are true regarding Defendants' interference with the grievance process, such allegations could be used to counter Defendants' claims that Plaintiff failed to exhaust his administrative remedies.  *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731 (2001).  However, overlooking or ignoring his grievances does not, in itself, interfere with his access to the courts.  Therefore, Plaintiff's claims regarding Defendants' interference with his access to the courts are dismissed with prejudice.

## OTHER ALLEGATIONS

Plaintiff states that on many occasions, he and other inmates witnessed Defendants Ford, Shoff, Montgomery and Hackleman provide unlawful payments to inmates who acted as government witnesses in connection with the *Sahakian* prosecution (¶ 41).  However, Plaintiff has no standing to bring an action under 18 U.S.C. § 201, and this claim is dismissed with prejudice.

Finally, Plaintiff mentions a few individuals in the text of the complaint who are not listed as Defendants, specifically Castillo (¶ 29), Cross (¶ 17), Francis (¶ 34), M(e)yers (¶¶ 22, 45), Simmons (¶¶ 4, 6), Welch (¶ 29), and an unknown F.B.I. agent (¶ 3).  Because these individuals are not listed as defendants in the jurisdictional portion of the complaint, the Court does not consider

them to be parties to this action,

## SURVIVING CLAIMS

To summarize and clarify the lengthy discussion, above, the following claims survive this review under § 1915A.  Defendants need respond only to these claims:

**COUNT 1**     against Ahrens, Billy, Bludworth, Carr, Cutchin, Ellis, Ford, Gonzolas, Hackleman, Hershberger, Hudson, Hughs, Jacobs, D.J. Krist, Lt. Krist, Lockridge, Mash, Montgomery, Murphy, Perry, Price, Rau, Shoff, Simmons, Stepp, Swartz, Urbanik and Unknown Defendants  for a conspiracy to cause him physical harm in retaliation for withdrawing his testimony against other inmates;

**COUNT 4**     against Urbanik for failing to prevent Plaintiff's suicide attempt, and against Bakke, Rau, Shoff and Urbanik for discontinuing his medication;

**COUNT 6**     against the United States for negligence (FTCA claim); and

**COUNT 7**     against  Ellis, Hudson, Jacobs, Montgomery, Rau, Shoff, Stepp and an Unknown Marion Employee for interfering with his legal mail.

## DISPOSITION

**IT IS HEREBY ORDERED** that **COUNT 2, COUNT 3** and **COUNT 5** are **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that Defendants **ASHCROFT, BONDURANT, BROWN, BURGES, DORSETT, FEDERAL BUREAU OF PRISONS, JANNINGS, JARRETT, LI, MIQUELON, SAWYER, WATTS** and **UNKNOWN DEPARTMENT OF JUSTICE EXECUTIVES** are **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff shall complete and submit a USM-285 form for Defendants **AHRENS, BAKKE, BILLY, BLUDWORTH, CARR, CUTCHIN, ELLIS,**

**FORD, GONZOLAS, HACKLEMAN, HERSHBERGER, HUDSON, HUGHES, JACOBS, D.J. KRIST, LT. KRIST, LOCKRIDGE, MASH, MONTGOMERY, MURPHY, PERRY, PRICE, RAU, SHOFF, STEPP, SWARTZ, URBANIK**, the **UNITED STATES ATTORNEY for the SOUTHERN DISTRICT of ILLINOIS** and **the ATTORNEY GENERAL of the UNITED STATES** within **THIRTY (30) DAYS** of the date of entry of this Memorandum and Order.  The Clerk is **DIRECTED** to send Plaintiff **TWENTY-NINE (29)** USM-285 forms with Plaintiff's copy of this Memorandum and Order.  **Plaintiff is advised that service will not be made on a defendant until Plaintiff submits a properly completed USM-285 form for that defendant.**

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants **AHRENS, BAKKE, BILLY, BLUDWORTH, CARR, CUTCHIN, ELLIS, FORD, GONZOLAS, HACKLEMAN, HERSHBERGER, HUDSON, HUGHES, JACOBS, D.J. KRIST, LT. KRIST, LOCKRIDGE, MASH, MONTGOMERY, MURPHY, PERRY, PRICE, RAU, SHOFF, STEPP, SWARTZ** and **URBANIK**.  The Clerk shall also prepare a summons for the United States Attorney for the Southern District of Illinois and the Attorney General of the United States. The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants **AHRENS, BAKKE, BILLY, BLUDWORTH, CARR, CUTCHIN, ELLIS, FORD, GONZOLAS, HACKLEMAN, HERSHBERGER, HUDSON, HUGHES, JACOBS, D.J. KRIST, LT. KRIST, LOCKRIDGE, MASH, MONTGOMERY, MURPHY, PERRY, PRICE, RAU, SHOFF, STEPP, SWARTZ** and **URBANIK** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure, and on

the United States Attorney for the Southern District of Illinois and the Attorney General of the United States, Washington, D.C., pursuant to Rule 4(i) of the Federal Rules of Civil Procedure. The Marshal shall also serve a copy of the Complaint, Summons, and this Order upon the United States Attorney for the Southern District of Illinois and upon the Attorney General of the United States at Washington, D.C., pursuant to Rule 4(i) of the Federal Rules of Civil Procedure. All costs of service shall be advanced by the United States. For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form. Service shall not be made on the Unknown Defendants until such time as Plaintiff has identified them by name on a USM-285 form and in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to former employees of Bureau of Prisons who no longer can be found at the work address provided by Plaintiff, the Bureau of Prisons shall furnish the Marshal with the defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from the B.O.P. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received. If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as

requested.

- Personally serve process upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant.  Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required.  Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff  is **ORDERED** to serve upon Defendants or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court.  He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts.  This shall be done in writing and not later than seven (7) days

after a transfer or other change in address occurs.

**IT IS SO ORDERED.**

**DATED this 7th day of July, 2006.**

**s/ Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**